IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE JORDAN, | : | CIVIL ACTION NO. **3:CV-12-2509** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES BUREAU OF PRISONS, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On December 17, 2012, Plaintiff Lawrence Jordan, currently an inmate at the United States Penitentiary Lewisburg, Pennsylvania ("USP-Lewisburg"), submitted, *pro se*, two separate *Bivens* civil rights actions pursuant to 28 U.S.C. § 1331.[1]  (Doc. 1). Plaintiff submitted two separate handwritten Complaints in two separate envelopes addressed to the Clerk of Court which were both received on December 17, 2012.  Plaintiff's first Complaint consisted of 6 handwritten pages and his second Complaint consisted of 3 handwritten pages.  The Clerk of Court, on its own, improperly combined both of Plaintiff's Complaints and jointly filed them as one Complaint in the above action.[2]  The Clerk of Court incorrectly docketed Plaintiff's second Complaint as Exhibit 1

---

[1]*See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).   Plaintiff's actions fall within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).
       As Plaintiff correctly indicates in both of his Complaints, they are *Bivens* actions under §1331 since he seeks monetary damages from federal officials for alleged violations of his constitutional rights. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894 (1978).

[2]We have labeled the pages of Plaintiff's Complaint as pages 1-6,  Doc. 1.

to his first Complaint, Civil No. 12-2509, Doc. 1-1, pp. 1-3. Plaintiff 's constitutional claims in each of his two Complaints were separate and distinct. Additionally, even though Plaintiff clearly labeled his Complaints as being filed against federal officials under 28 U.S.C. § 1331, the Clerk of Court erroneously docketed this case in Civil No. 12-2509 as a civil rights action under 42 U.S.C. §1983. We directed the Clerk of Court to correct the docket in Civil No. 12-2509 to reflect that this is a *Bivens* civil rights action and it did so.

Moreover, we directed the Clerk of Court to remove Plaintiff 's second Complaint which was incorrectly docketed in Civil No. 12-2509 to reflect that it was Exhibit 1 to Plaintiff 's first Complaint and to docket Plaintiff's second Complaint as a separate *Bivens* civil rights action and, it did so. Thus, Plaintiff 's second Complaint was filed as Civil No. 13-0061, M.D. Pa.

In both of his pleadings, Plaintiff named as the sole Defendant the U. S. Bureau of Prisons ("BOP"). In this Report and Recommendation ("R&R") we will screen Plaintiff's Complaint filed in Civil No. 12-2509. In a separate R&R, we will screen Plaintiff's second Complaint filed in Civil No. 13-0061.

Plaintiff indicates in his Complaint filed in Civil No. 13-0061 that prior to his confinement at USP-Lewisburg, he was confined at USP-Big Sandy in Inez, KY, commencing on July 10, 2010. Plaintiff states that he was transferred to USP-Lewisburg on September 3, 2011. Plaintiff is presently confined at USP-Lewisburg.

Plaintiff indicates on his instant pleading that he did not exhaust his BOP administrative

remedies.[3]  (Doc. 1, p. 1).  Plaintiff states on the cover sheet of his Complaint that he did not exhaust his BOP administrative remedies because the "Only thing that could have been resolved for my injuries was monetary compensation" and because "Injuries & pain could not [have] been taken back or fixed." (*Id.*, p. 1).   Thus, Plaintiff admits on the face of his Complaint that he failed to exhaust his BOP administrative remedies with respect to his claims.

Plaintiff paid the full filing fee in this case. (Doc. 4). On January 7, 2013, Plaintiff also filed a 1-page, 2-paragraph Motion for Protective Order in which he requests the Court to order "immediate single cell status" for him and to order escorts for him in the prison by a lieutenant. (Doc. 5). Finally, Plaintiff filed another document on January 7, 2013,  titled "Motion to Release Evidentiary Documents and Other Materials to the Courts and Plaintiff." (Doc. 6).  In his 2-sentence Doc. 6 filing, Plaintiff seeks the Court to order USP-Lewisburg to provide him with copies of Incident Reports from "9-17-2012/9-13-2012/10-9-2012" and the Court to order the prison to take photos of his injuries from the incidents complained of his Complaint and, to provide him with copies of the photos.

---

[3]It is well-settled that the Plaintiff must exhaust all of his available administrative remedies with respect to each one of his claims prior to filing a civil rights suit.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

## II. Allegations of Complaint.

In his present pleading, Doc. 1, pp. 1-6, Plaintiff raises Eighth Amendment cruel and unusual punishment claims in relation to his conditions of confinement on two dates at USP-Lewisburg. Plaintiff states that he was being housed by himself at USP-Lewisburg in administrative custody in a "maximum security punitive program," seemingly the Special Management Unit ("SMU") Program. (Doc. 1, p. 2). Plaintiff states that he was 2/3 finished with the program. Plaintiff specifies two separate incidents in which he alleges that unnamed prison staff at USP-Lewisburg used excessive force on him and, unlawfully restrained him and kept him in restraints. The first incident occurred on September 16, 2012 and the second incident occurred on October 9, 2012.

Plaintiff states that on September 16, 2012, while he was in his cell, unnamed USP-Lewisburg prison personnel brought another inmate to be his cell-mate without giving Plaintiff the other inmate's background. Plaintiff states that unnamed USP-Lewisburg prison staff were trying to force him to take a cell-mate. (*Id.*, p. 4). Plaintiff told corrections officers that having another man in his cell "was not going to work." According to the Plaintiff, the corrections officers then threatened him with their "devil tactic." Plaintiff states that the corrections officers left and came back with a "team" of corrections officers. Plaintiff further states that upon the arrival of the "team," they asked if they could handcuff him. Plaintiff further states that he walked toward the back of his cell as directed, and corrections officers cuffed him.

Plaintiff states that the corrections officers had him in restraints for about 24 hours. Plaintiff further states that unnamed USP-Lewisburg prison improperly placed the restraints on him to cause

him pain and that he had "excruciating and unbearable" pain due to the way he was restrained. Plaintiff avers that unnamed USP-Lewisburg prison "tied [him] up like a beast with excruciating [and] unbearable pain to enforce orders [and] means of submission." (*Id.*, p. 5).

Plaintiff states that about three weeks later, on October 9, 2012, he was again taken to a security cage so that his cell could be searched by USP-Lewisburg prison staff. When Plaintiff was taken back to his cell, he states that he was still in handcuffs and directed to go to the back of his cell, face forward. Plaintiff asked why and he was told that another inmate was going to be celled with Plaintiff. Unnamed prison personnel then brought another inmate to be Plaintiff's cell-mate. Plaintiff told the unnamed corrections officers that having another man in his cell "was not going to work" and that since he was in a "maximum security punitive program" with extremely violent inmates "nobody is suppose (sic) to have a celly." (*Id.*). Plaintiff states that neither his safety nor the safety of the other inmate was considered by prison staff and, that their backgrounds and possible gang separations were not considered before deciding to make them cell-mates.

Plaintiff states that after he raised his concerns, the other inmate did not want to enter his cell. Plaintiff avers that the unnamed prison staff tired to make the other inmate enter Plaintiff 's cell, and that Plaintiff then felt his safety and the other inmate's safety were being jeopardized and that he spoke out about staff violating the rights of the other inmate. Plaintiff then avers that the staff took the other inmate away and as punishment for his speaking out, staff messed up his cell and left him in handcuffs in his cell with his hands behind his back "unable to perform normal human functions like using the bathroom and eating for about 30 min[utes]." (*Id.*).

According to the Plaintiff, the unnamed corrections officers then returned to his cell with

more "vindictive shenanigans." Plaintiff states that the unnamed corrections officers came back to his cell with a "team" of corrections officers and with a camera. Unnamed corrections officers asked Plaintiff if he was going to resist their team, and he stated that he was in handcuffs and could not resist. (*Id*., pp. 2-3). Plaintiff further states that the "team" then entered his cell and that he was placed in paper clothes and put in hand restraints, shackles, handcuffs and a waist chain. Plaintiff states that the unnamed corrections officers improperly used the restraints to cause him pain, including using the handcuffs to cut blood circulation in hands and damage the nerve in his right wrist and that he received metal burns from having the restraints put on too tightly. (*Id*., p. 3). Plaintiff further states that he had "excruciating and unbearable" pain due to the way he was restrained.

Plaintiff then states that the unnamed corrections officers kept him in restraints for about 24 hours. Plaintiff alleges that the cell he was placed in had no sheets or blankets and that the window was open despite being in the middle of October [2012]. (*Id*.).

Plaintiff avers that he received permanent nerve damage to his hand and psychological damage due the use of restraints by unnamed prison staff to inflict pain on him to enforce their rules.

Plaintiff names as the sole Defendant the United States Bureau of Prisons, located at the United States Penitentiary Lewisburg. Plaintiff raises Eighth Amendment claims for cruel and unusual punishment in relation to the conditions of his confinement on September 16, 2012 and October 9, 2012. As relief, Plaintiff requests monetary compensation for physical pain and emotional damage. Plaintiff has also requests to be transferred to a medical facility where he can

receive surgery and medical treatment for his injuries. Plaintiff does not name any individual staff member of USP-Lewisburg as a Defendant, and he does not indicate if he is suing any Defendant in his official and/or personal capacities.[4]  Plaintiff seeks a specific amount of monetary damages, *i.e.*, $250,000, in his Complaint. (*Id.*, p. 3).  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., we will recommend that Plaintiff's request for specific monetary damages be stricken from his Complaint.

This Court has jurisdiction over Plaintiff's *Bivens* civil rights action pursuant to 28 U.S.C. § 1331.  *See Butz, supra*.

We will now screen Plaintiff's Complaint as we are obliged to do under the PLRA.  *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).[5]

## III.  PLRA.

Plaintiff Lawrence Jordan, an inmate at USP-Lewisburg, paid the full filing fee. (Doc. 4). Notwithstanding Plaintiff's payment of the filing fee, the Prison Litigation Reform Act of 1995 (the "PLRA")[6] obligates the Court to engage in a screening process.  *See Vega v. Kyler*, C.A. No. 03-1936

---

[4]In a *Bivens* suit, Plaintiff cannot sue an individual federal Defendant for damages in his or her official capacity.  Sovereign immunity bars Plaintiff from bringing a *Bivens* action for money damages against a Defendant in his or her official capacity as a federal agent.  *See FDIC v. Meyer*, 501 U.S. 471, 475 (1994); *Lewal v. Ali*, 289 Fed.Appx. 515, 516 (3d Cir. 2008). Thus, insofar as Plaintiff is deemed as seeking damages against any individual Defendant in his or her official capacity, such claim should  be dismissed with prejudice.  Based on settled case law, we find futility of an amended pleading to sue any individual Defendant for damages in his or her official capacity.

[5]We have been assigned his case for pre-trial matters.

[6]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

(3d Cir. 2004), 2004 WL 229073(non-precedential)(if prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915(A), not 28 U.S.C. § 1915(e)(2)(B); *see also Vieux v. Smith*, 2007 U.S. Dist. LEXIS 40859, 2007 WL 1650579 (M.D. Pa.); *Hartz v. Whalen*, 2008 U.S. Dist. LEXIS 71960, 2008 WL 4107651 (M.D. Pa.).

Section 1915(A) provides:

(a) Screening.- The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for dismissal.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint if the complaint -

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief against defendant who is immune from such relief.

28 U.S.C. § 1915(A).

## IV. *Bivens* Standard.

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200, n. 16 (M.D. Pa. 1992); *Mitchell v. Dodrill*, 696 F.Supp. 2d 454, 457, n. 1 (M.D. Pa. 2010)(citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). To state a claim under *Bivens*, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law. *See Young v. Keohane*, 809 F.Supp. at 1199; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon

a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Fisher v. Matthews,* –F.Supp.2d–, 2011 WL 1982920, * 23 (M.D. Pa.) *(citing Rode, supra).*

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588.

## V. Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard
> applicable to a motion to dismiss in light of the United States Supreme Court's
> decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,*
> --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint
> must contain sufficient factual matter, accepted as true to 'state a claim that relief is
> plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570).
> The Court emphasized that "only a complaint that states a plausible claim for relief

survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
> *Fowler,* 578 F.3d at 210-11.

> The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Banks v. County of Allegheny*, 568 F.Supp.2d 588-589.

## VI. Discussion.

As mentioned, Plaintiff alleges in his Complaint two incidents in which unnamed USP-Lewisburg prison staff improperly placed restraints on him to cause him pain and kept him restrained for about 24 hours, namely, on September 16, 2012, and on October 9, 2012.

Plaintiff further avers that the team of corrections officers put him in shackles and handcuffs with a waist chain on both dates, and that the corrections officers had a vendetta against him and therefore put the restraints on him improperly. Plaintiff also alleges that the restraints were used as "compression devices." Plaintiffs states that he has metal burns on his wrists and abdomen because the restraints were too tight. Plaintiff further states that in total, there were three times in which unnamed corrections officers put him in restraints in the manner described above. According to the Plaintiff, he was placed in a cell with no sheets or blankets on the bed, and the window open in "the middle of October." Plaintiff alleges that he was restrained in the cell on both dates for a period of about 24 hours. Plaintiff states that he has permanent damage to his hand as a result of being restrained in the manner described above.

### 1. Failure to Exhaust BOP Administrative Remedies

As mentioned, the face of his Complaint, Plaintiff admits that he failed to exhaust his BOP administrative remedies with respect to any of his instant Eighth Amendment claims. A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). In screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss without prejudice Plaintiff's action regarding his constitutional claims which are not yet exhausted because his Complaint makes clear that he has not commenced the BOP administrative remedy process. (Doc. 1, p. 1). *See Jones v. Lorady*, 2011 WL 2461982 (M.D. Pa. 6-17-11)(citing *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10)).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit stated:

> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra*.

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell, supra*; *Ahmed v. Dragovich,* 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle,* 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*; *Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner,* 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner,* 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted). Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d at 465, stated:

> The United States Court of Appeals for the Third Circuit has not issued a precedential opinion on the issue. However, in a non-precedential opinion, the Court found that the lower court had properly dismissed the plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. *Oriakhi v. United States,* 165 Fed.Appx. 991, 993 (3d Cir.2006) (not precedential). "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Id.* (quoting *Johnson,* 340 F.3d at 627–28). The Court further stated that "[t]he fact that [the plaintiff] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi,* 165 Fed.Appx. at 993 (citing *Johnson,* 340 F.3d at 627–28). (not precedential).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9 . The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1; *Spruill v. Gillis,* 372

F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

We take judicial notice that the BOP had an administrative remedy policy at USP-Lewisburg during the relevant times of this case. *See Cooper v. Sniezek*, 2010 WL 3528848, *7-*8 (M.D. Pa. 9-7-10); *Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64. As stated, Plaintiff admits on the face of his instant Complaint that he has not exhausted his BOP administrative remedies with respect to any of his claims. Plaintiff also seems to indicate that he is excused from exhaustion since the only remedy for his alleged injuries is money damages. (Doc 1, p. 1). However, as discussed herein, exhaustion is required regardless of what relief the inmate seeks.

The *Cooper* Court, 2010 WL 3528848, *7-*8, stated as follows:

> An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*. An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). The inmate has twenty (20) days following the date on which the basis for the complaint occurred in which to complete informal resolution and submit a formal written administrative remedy request. *Id*. The procedure further provides that an extension may be allowed where an inmate demonstrates a valid reasons for delay. *Id*. at § 542.14(b). The regulation states, in part:

> Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request of Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request of Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

> *Id*. If dissatisfied with the response to the formal written request, the

inmate may then appeal an adverse decision to the Regional Office and the Central Office of BOP's General Counsel. *Id.* at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *Id.* at § 542.15(a).

The *Cooper* Court also stated:

A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

2010 WL 3528848, *7.

Thus, we first address the threshold question of whether Plaintiff has exhausted all available BOP administrative remedies and conclude that the instant Complaint clearly shows Plaintiff has not, in fact, exhausted any of his available BOP administrative remedies before filing his Complaint. (Doc. 1, p. 1). Also, based on the fact that Plaintiff signed his instant Complaint on December 12,

2012, and that a portion of his constitutional claims arose on October 9, 2012, it is apparent that Plaintiff could not have fully exhausted all of his available BOP administrative remedies before he filed his Complaint. Indeed, Plaintiff admits in his Complaint that he failed to exhaust the available BOP administrative process regarding his Eighth Amendment claims.

Thus, it is apparent from Plaintiff's pleading that he has not yet commenced the available BOP administrative process, which would entail review by staff, an on-site grievance coordinator, the warden, as well as the BOP central office. (Doc. 1, p. 1). We find that Plaintiff's own admission compels the conclusion that he has not yet exhausted all of his BOP administrative remedies.

Therefore, we will recommend that the Plaintiff's Complaint be dismissed without prejudice pending completion of fully exhausting the BOP administrative remedy process with respect to each one of his constitutional claims.

### 2. *Defendant BOP Lewisburg*

In his Complaint, Plaintiff names as the sole Defendant the BOP. The law is clear that the BOP is not a proper Defendant in a *Bivens* action. *See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Njos v. BOP*, Civil No. 12-1251, M.D. Pa., January 8, 2013 Memorandum and Order (J. Kosik)(Court dismissed with prejudice Plaintiff inmate's constitutional claims in a *Bivens* action against the BOP). Thus, we will recommend that Defendant BOP Lewisburg be dismissed with prejudice from this *Bivens* action. Based on well-settled case law, we find futility of any amended pleading with respect to Plaintiff's constitutional claims asserted against Defendant BOP under *Bivens*. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

16

### 3. Plaintiff's Request for Transfer to a Medical Facility

As mentioned, Plaintiff on several occasions requested to be transferred from USP-Lewisburg to a medical facility. As relief in his Complaint, Plaintiff seeks inductive relief in the nature of a court order directing the BOP to move him from USP-Lewisburg to a medical facility. (Doc. 1, p. 3). In that regard, we note that Plaintiff has no constitutional right to confinement in any particular prison, facility or rehabilitative program. *See Olim v. Wakinekona,* 461 U.S. 238, 245 (1983). Further, Plaintiff has no constitutional right to any particular classification or custody level in prison. *See Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997). Recently, in *Njos v. BOP*, Civil No. 12-1251, M.D. Pa., January 8, 2013 Memorandum and Order (J. Kosik), the Court dismissed with prejudice Plaintiff inmate's request in a *Bivens* action for the Court to order the BOP to transfer him to a federal medical facility.

Based on well-settled case law, we will recommend that Plaintiff's request to be transferred by the BOP to a medical facility be dismissed with prejudice and, we find futility of any amended pleading in this *Bivens* civil rights action with respect to Plaintiff's request for transfer to a medical facility. *See Njos v. BOP*, Civil No. 12-1251.

### 4. Eighth Amendment Conditions of Confinement Claims

As described above, Plaintiff alleges the following conditions of his confinement on September 16, 2012 and on October 9, 2012, violated his Eighth Amendment rights: (1) the restraints, namely, the handcuffs and waist-chains, were too tight, and being used as compression devices; (2) being restrained in the manner described above, in a cell with no sheets or blankets with the window open for periods of about 24 hours; and (3) being

restrained in the manner described above, in a cell for about 24 hours with his hands cuffed behind his back.

In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

> The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting
>
> *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).
>
> To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (*quoting Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:
>
>> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would
>>
>> not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists. *Wilson v. Seiter*,

501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id. at 298.* As described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

To summarize, the Supreme Court has held that when an Eighth Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). Furthermore, the Third Circuit defined deliberate indifference as "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also Bizzell v. Tennis*, 449 Fed. Appx. 112, 115 (3d Cir. 2011). Furthermore, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence

will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Based on the facts alleged in his Complaint, Plaintiff has not stated sufficient facts for the Court to conclude that his Eighth Amendment conditions of confinement claims should proceed because he has failed to allege: (1) that the deprivation alleged was objectively, sufficiently serious; and (2) that any properly named individual Defendant who was one of the unnamed staff at USP-Lewisburg involved with the two incidents described above acted with deliberate indifference to an excessive risk to his health and/or safety as required by *Farmer*.

As mentioned above, an objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). The facts of Plaintiff's Complaint allege that he was confined to a cell in restraints on two separate occasions both times for a period of about 24 hours. On the second occasion, Plaintiff avers that a window in the cell was left open in October, and that he was deprived of sheets and a blanket. Plaintiff does not state what the outside temperature was or if he was cold. Plaintiff further alleges that the restraints were too tight, that he was cuffed behind his back making necessary human functions difficult to perform, and that the restraints left metal burns on his wrists and abdomen causing permanent damage. These deprivations do not amount to the denial of "minimal measures of life's necessities" such as food, water, and shelter. Further, as stated, Plaintiff has

named any proper Defendant with respect to his constitutional claims. Therefore, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claims be dismissed without prejudice to re-file after he exhaust his BOP administrative remedies.

   *5. Plaintiff's Motion for Protective Order (Doc. 5)*

   In Plaintiff's Motion for Protective Order, he requests this Court to order the BOP to provide him with "immediate single cell status."(Doc. 5). In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated that it was well settled that "double-celling" is not *per se* unconstitutional. Also, the Court should not interfere with the BOP's decisions as to which inmates should be double celled. We thus find that to the extent that Plaintiff is requesting relief in the form of Court intervention and management while he is in prison, *i.e.,* directing the staff at USP-Lewisburg not to put a cell-mate in Plaintiff's cell, the Court will not generally interfere with prison administration matters such as which inmates should be double celled. The Court should give significant deference to judgments of prison officials regarding prison regulations, prison safety and prison administration. *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002); *Levi v. Ebbert*, 2009 WL 2169171, *6 (M.D. Pa.).

   Thus, based on well settled case law, we will recommend that Plaintiff's Motion for Protective Order (Doc. 5) ordering his "single cell status" be denied.

   *6. Plaintiff's Motion to Release Evidentiary Documents and Other Materials to the Courts and Plaintiff (Doc. 6)*

   In his Doc. 6 Motion, Plaintiff requests the Court to order USP-Lewisburg staff to provide him with Incident Reports issued against him on the following dates: September 13, 2012, September 17, 2012, and October 9, 2012. Plaintiff also requests the Court to order prison staff

to take photos of him and to provide him with pictures of his injuries to his wrist and abdomen which allegedly occurred on September 16, 2012, and October 9, 2012. (Doc. 6). It appears that after the alleged September 16, 2012 and October 9, 2012 incidents, unnamed prison staff issued Incident Reports against Plaintiff. Insofar as Plaintiff is deemed as challenging the Incident Reports issued against on September 13, 2012, September 17, 2012, and October 9, 2012, by USP-Lewisburg unnamed staff following the two incidents alleged in his Complaint, if Plaintiff was convicted at a disciplinary hearing by the DHO and his sanctions affect the duration of his confinement in prison, Plaintiff's constitutional claims challenging the Reports may be *Heck* barred until he has any disciplinary convictions overturned on appeal or *via* §2241 habeas petitions. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck*, the Supreme Court stated:

> A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487. *See also Murphy v. Bloom*, 443 Fed.Appx. 668, 669 (3d Cir. 2011).

We find that Plaintiff 's Doc. 6 Motion should be denied since it is premature and since the information he requests must be made through a discovery request to any proper Defendants after he exhaust his BOP administrative remedies and after he re-files a proper Amended Complaint.

## VII.  Recommendation.

Based on the foregoing, it is respectfully recommended that Defendant BOP be dismissed with prejudice from this *Bivens* action. It is recommended that the Plaintiff's Complaint (**Doc. 1**) be dismissed without prejudice due to his failure to exhaust his BOP administrative remedies.  It is also recommended that Plaintiff's request  for transfer to a medical facility be dismissed with prejudice. It is also recommended that Plaintiff's Motion for Protective Order (**Doc. 5**) requesting the Court to immediately order his single cell status be denied. Additionally it is recommended that Plaintiff's Motion for Release of Evidentiary Documents (**Doc. 6**) be denied.

 s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 14, 2013**

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


LAWRENCE JORDAN,            :        CIVIL ACTION NO. **3:CV-12-2509**

                                :

            Plaintiff          :        (Judge Kosik)

                                  :

            v.             :        (Magistrate Judge Blewitt)

                                  :

UNITED STATES BUREAU OF PRISONS,   :

                                  :

            Defendant      :


## <u>NOTICE</u>

     **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 14, 2013.**

     Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing

requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections may constitute a waiver of any appellate rights.


                                        **s/ Thomas M. Blewitt**

                                        **THOMAS M. BLEWITT**

                                        **United States Magistrate Judge**


**Dated: January 14, 2013**