IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE JORDAN, | : | CIVIL ACTION NO. **3:CV-12-2509** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES BUREAU OF PRISONS, | : | |
| *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On December 17, 2012, Plaintiff Lawrence Jordan, currently an inmate at the United

States  Penitentiary Lewisburg, Pennsylvania ("USP-Lewisburg"), submitted, *pro se*, two

separate *Bivens* civil rights actions pursuant to 28 U.S.C. § 1331.[1]  (Doc. 1). Plaintiff

submitted two separate handwritten Complaints in two separate envelopes addressed to the

Clerk of Court which were both received on December 17, 2012.  The Clerk of Court

incorrectly docketed Plaintiff's second Complaint as Exhibit 1 to his first Complaint, Civil No.

12-2509, Doc. 1-1, pp. 1-3. Plaintiff 's constitutional claims in each of his two Complaints

were separate and distinct. We directed the Clerk of Court to correct the docket in Civil No.

---

[1]*See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91
S.Ct. 1999 (1971).  Plaintiff's actions fall within 28 U.S.C. § 1331 ("The district courts shall have
original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the
United States." (Emphasis added).
   Both of Plaintiff's Complaints were *Bivens* actions under §1331 since he sought monetary
damages from federal officials for alleged violations of his constitutional rights. *See Butz v.
Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894 (1978).

12-2509 to reflect that this was a *Bivens* civil rights action and it did so.

Moreover, we directed the Clerk of Court to remove Plaintiff 's second Complaint which was incorrectly docketed in Civil No. 12-2509 as Exhibit 1 to Plaintiff 's first Complaint and to docket Plaintiff's second Complaint as a separate *Bivens* civil rights action and, it did so. Thus, Plaintiff 's second Complaint was filed as Civil No. 13-0061, M.D. Pa. On January 2, 2013, Plaintiff paid the filing in his Civil No. 12-2509 case. (Doc. 4).

In his pleading in his Civil No. 12-2509 case, Plaintiff named as the sole Defendant the U. S. Bureau of Prisons ("BOP"). On January 14, 2013, we issued a Report and Recommendation ("R&R") in which we screened Plaintiff's original Complaint filed in Civil No. 12-2509 as required by the PLRA.[2] (Doc. 7).

In our Doc. 7 R&R issued in Plaintiff's Civil No. 12-2509 case, we pointed out that Plaintiff indicated on his Complaint that he did not exhaust his BOP administrative remedies.[3] (Doc. 1, p. 1). Plaintiff also stated on the cover sheet of his Complaint that he

_____

[2]Plaintiff indicated in his Complaint filed in Civil No. 13-0061 that prior to his confinement at USP-Lewisburg, he was confined at USP-Big Sandy in Inez, KY, commencing on July 10, 2010. Plaintiff states that he was transferred to USP-Lewisburg on September 3, 2011. Plaintiff is presently confined at USP-Lewisburg.
On February 19, 2013, the Court issued Order dismissing Plaintiff's Civil No. 13-0061 case without prejudice for failure of Plaintiff to file a proper *in forma pauperis* motion and an authorization. Subsequently, Plaintiff filed a letter seeking the return of his $350.00 filing fee in his Civil No. 13-0061 case. The Court then issued an Order and directed the Clerk of Court to return Plaintiff's money to him in his Civil No. 13-0061 case.

[3]It is well-settled that the Plaintiff must exhaust all of his available administrative remedies with respect to each one of his claims prior to filing a civil rights suit. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion

2

did not exhaust his BOP administrative remedies because the "Only thing that could have been resolved for my injuries was monetary compensation" and because "Injuries & pain could not [have] been taken back or fixed." (*Id.*, p. 1). Thus, Plaintiff admitted on the face of his original Complaint that he failed to exhaust his BOP administrative remedies with respect to his claims.

As stated, Plaintiff paid the full filing fee in this case. (Doc. 4). On January 7, 2013, Plaintiff also filed a 1-page, 2-paragraph Motion for Protective Order in which he requested the Court to order "immediate single cell status" for him and to order escorts for him in the prison by a lieutenant. (Doc. 5). Finally, Plaintiff filed another document on January 7, 2013, titled "Motion to Release Evidentiary Documents and Other Materials to the Courts and Plaintiff." (Doc. 6). In his 2-sentence Doc. 6 filing, Plaintiff sought the Court to order USP-Lewisburg to provide him with copies of Incident Reports from "9-17-2012/9-13-2012/10-9-2012" and, sought the Court to order the prison to take photos of his injuries from the incidents complained of his Complaint and to provide him with copies of the photos.

In his original Complaint, Doc. 1, pp. 1-6, Plaintiff raised Eighth Amendment cruel and unusual punishment claims in relation to his conditions of confinement on two dates at USP-Lewisburg. Plaintiff stated that he was being housed by himself at USP-Lewisburg in

---

requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

administrative custody in a "maximum security punitive program," seemingly the Special Management Unit ("SMU") Program.    (Doc. 1, p. 2).   Plaintiff stated that he was 2/3 finished with the program. Plaintiff specified two separate incidents in which he alleged that unnamed prison staff at USP-Lewisburg used excessive force on him and, unlawfully restrained him and kept him in restraints.   The first incident occurred on September 16, 2012, and the second incident occurred on October 9, 2012.

In our Doc. 7 R&R, we recommended that Defendant BOP be dismissed with prejudice from this *Bivens* action. We recommended that the Plaintiff's  Complaint (Doc. 1) be dismissed without prejudice due to his failure to exhaust his BOP administrative remedies.  We also recommended that Plaintiff's request  for transfer to a medical facility be dismissed with prejudice. Further, we recommended that Plaintiff's Motion for Protective Order (Doc. 5) requesting the Court to immediately order his single cell status be denied. Additionally, we recommended that Plaintiff's Motion for Release of Evidentiary Documents (Doc. 6) be denied.

Plaintiff filed Objections to our R&R.  On March 19, 2013, the Court issued a Memorandum and Order and adopted, in part, our Doc. 7 R&R.  (Doc. 13).  In pertinent part, the Court dismissed Plaintiff's original Complaint without prejudice and allowed Plaintiff to file an amended Complaint regarding his Eighth Amendment claims as detailed in the Court's Memorandum.

On April 1, 2013, Plaintiff filed a 2-page, 6-paragraph handwritten Amended Complaint.  (Doc. 14).  Named again as the sole Defendant was "F.[B]OP."  Plaintiff's

Amended Complaint was not a proper pleading as required by Rule 8.  Rather, it was largely a response to the Court's March 19, 2013 Memorandum in which Plaintiff addressed some of the Court's findings.  For example, in his Amended Complaint, Plaintiff stated that he did not file a *Bivens* civil rights action in this case and seemingly that his named Defendant, BOP, was proper.   Plaintiff also more fully explained why he failed to exhaust his administrative remedies as directed by the Court and, he stated that he attempted to exhaust his BOP administrative  remedies but he did not receive responses and he was retaliated against by a shakedown in his cell.  Plaintiff concluded that "with no aid in remedies I was propelled to file with thee (sic) Court." (*Id.*, p. 1).

Plaintiff also stated that he was not able to identify and name the Defendant prison staff members who were involved with the September 13, 2012 incident and the October 9, 2012 incident, but that he could identify the Team Leaders, namely Lt. Johnson and Lt. White, respectively.  Plaintiff also summarized the BOP program statement as to when a Team can be put into action to restrain an inmate, and he stated that a video tape from prison camera is supposed to be run before a Team is ordered to restrain an inmate and while they retrain an inmate.   With respect to his Eighth Amendment denial of medical care claim, Plaintiff simply stated that he has the right to be accommodated medically and for the BOP medical staff to meet his medical needs.  (*Id.*, p. 2). As relief in his Amended Complaint, Plaintiff requested that  his "case be opened and to be proceeded (sic) for monetary compensation." (*Id*.).   We note that Plaintiff's case was not closed by the Court.

In screening Plaintiff's Amended Complaint, we found that it was not a proper pleading and that it failed to sufficiently state his Eighth Amendment claims as directed by the Court in its Doc. 13 Memorandum. We therefore issued an Order directing Plaintiff to file a Second Amended Complaint by April 16, 2013, because Plaintiff failed to sufficiently allege personal involvement of any proper Defendant and because his Amended Complaint was in clear violation of Federal Rule of Civil Procedure 8(a) and the standards required to state a claim under *Bivens*. (Doc. 15).

On May 9, 2013, Plaintiff filed his Second Amended Complaint **(Doc. 19)**, which we will now screen pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915. On May 21, 2013, Plaintiff filed a "Brief to Second Amendment (sic) Complaint" with attached Exhibits. (Doc. 20). The so-called "Brief" consists of two handwritten pages, and each page has only two sentences. Plaintiff states that a portion of his Exhibits show that he tried to get proper medical care for his leg condition, including a knee brace, when he was previously confined at USP-Big Sandy. Plaintiff also attached as Exhibits copies of some of his BOP administrative remedy requests and responses from BOP officials as well as a copy of a September 12, 2012 Incident Report issued against him and, copies of some of his medical records. Many of Plaintiff 's Exhibits attached to his Doc. 20 filing pre-date the first alleged unconstitutional incident which is claimed in his Second Amended Complaint, *i.e.*, on September 17, 2011.

## II.     STANDARDS OF REVIEW.

### A.     PLRA

Plaintiff Lawrence Jordan, an inmate at USP-Lewisburg, paid the full filing fee. (Doc. 4). Notwithstanding Plaintiff's payment of the filing fee, the Prison Litigation Reform Act of 1995 (the "PLRA")[4] obligates the Court to engage in a screening process. *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir. 2004), 2004 WL 229073(non-precedential)(if prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915(A), not 28 U.S.C. § 1915(e)(2)(B); *see also Vieux v. Smith*, 2007 U.S. Dist. LEXIS 40859, 2007 WL 1650579 (M.D. Pa.); *Hartz v. Whalen*, 2008 U.S. Dist. LEXIS 71960, 2008 WL 4107651 (M.D. Pa.).

Section 1915(A) provides:

(a) Screening.- The court shall review, before docketing if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) Grounds for dismissal.- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint if the complaint -

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief against defendant who is immune from such relief.

28 U.S.C. § 1915(A).

---

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

**B.** *BIVENS* **STANDARD**

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200, n. 16 (M.D. Pa. 1992); *Mitchell v. Dodrill*, 696 F.Supp. 2d 454, 457, n. 1 (M.D. Pa. 2010)(citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). To state a claim under *Bivens*, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law. *See Young v. Keohane*, 809 F.Supp. at 1199; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588.

## C.    MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

>> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Banks v. County of Allegheny*, 568 F.Supp.2d 588-589.

## III.    SECOND AMENDED COMPLAINT ALLEGATIONS (DOC. 19).

In his six page, single spaced, handwritten Second Amended Complaint, Plaintiff names the following fourteen Defendants, each of whom is employed by USP-Lewisburg: (1) Warden Bledsoe; (2) Lieutenant White; (3) Lieutenant Johnson; (4) Officer Russo; (5) Officer Atton; (6) Edinger; (7) Officer Shriek; (8) Lieutenant Whitman; (9) Nurse George Gregory; (10) Nurse Ms. Ried; (11) Nurse Ms. Runyur; (12) Ms. Snyder; (13) Warden Berkinbile; and (14) Clinical Director Dr. Kevin Pigos.  (Doc. 19, p. 1). Generally speaking, Plaintiff is alleging an Eighth Amendment excessive force claim, an Eighth Amendment conditions of confinement claim, and an Eighth Amendment denial of medical care claim.   Plaintiff also names "F.B.O.P." as a Defendant in the caption of his Second Amended Complaint.  (*Id.*).

In his Second Amended Complaint, he again alleges generally that "they" placed

him in restraints on several occasions.  The first incident in which Plaintiff alleges that "they" placed him in restraints, "due to inadequate reasons," occurred on September 17, 2011, during which time Plaintiff alleges that the restraints cut off his blood circulation and caused him pain, left metal burns around his wrist and stomach after they were removed, and left him unable to eat or use the toilet.  (Doc. 19, p. 1).  Plaintiff does not state the personal involvement of any named Defendant with respect to this September 17, 2011 incident.

The second restraints incident that Plaintiff alleges led to violations of his Eighth Amendment rights occurred on September 14, 2012.  Plaintiff alleges that he was placed in restraints for not accepting a cell mate into his cell.  (Doc. 19, p. 2).  He claims the following: "The Administration has been enforcing [and] foistering (sic) this issue by utilizing pugnitive (sic) restraints to force people to compromise their prudent nature in reference to their safety."  (Id.).  Plaintiff claims that as a result of this second incident in which he was placed in restraints, he was unable to use the toilet or eat, had his blood circulation cut off, and sustained burns to his wrists and abdomen.  (Id.). Plaintiff states that "they use [restraints] to inflict pain instead of to restrain."  He also claims that he was refused medical attention "after 48 hours under these conditions."  (Id.).  Again, with regards to this second restraints incident, Plaintiff has not named any specific Defendant involved in placing him in the restraints, in denying him food or toilet, or in denying him medical attention.  (Id.).  Plaintiff indicates  that Defendant Lieutenant Johnson was the active duty supervisory official when the September 14, 2012  incident occurred, and

that his Case Manager, Defendant Edinger was also present.

Plaintiff then describes a third incident that occurred on October 8, 2012. Plaintiff claims that on that date, after another inmate was brought to his cell to be housed with him and that the other inmate refused to cell with Plaintiff. Plaintiff claims that the inmate refused to cell with him because this other inmate had overheard a conversation he and Defendant Lieutenant White had. (Id.). Plaintiff also claims that "due to past events[,] the Administration seems to have a vindictive vendetta against [Plaintiff]." (Id.). Without factual background, Plaintiff then launches into generalized allegations that he was penalized for the other inmate refusing to be celled with him and that he was "placed in a cold cell that was below BOP standards in regards to temperature, also a window was left open the whole 24 hours [and] no blankets or standard clothing was provided. Plaintiff states that Defendant Lieutenant White was the active lieutenant for that "day shift 2." Plaintiff states that Defendant Officers Russo and Atton were present during the October 8, 2012 incident. Plaintiff also avers that he was denied medical attention until 2-3 weeks after the incident, at which time he was issued a bandage by Dr. Llama for his wrist. Plaintiff states that "[t]o this day[,] I still have metal burns on upper abdominal area." (Doc. 19, p. 3). Again, regarding these allegations that Plaintiff links to the October 8, 2012 incident, Plaintiff provides the Court with no factual background whatsoever in terms of why Plaintiff was allegedly confined under these circumstances or what transpired after the inmate refused to cell with Plaintiff. Plaintiff also fails once again to properly state the personal involvement of any named Defendant

with respect to his Eighth Amendment claims surrounding the October 8, 2012 incident.

On page 5 of his Second Amended Complaint, Plaintiff states that Defendant Officer Russo had knowledge of him being put in restraints on "10-8-13 (sic)." Plaintiff also states that Defendant Russo "was present [and] was the Officer to inform me about the team being ran (sic), while I already was in handcuffs." Also, on page 5 of his Second Amended Complaint, Plaintiff states that on "9-14-12 & 10-8-12," Defendant Edinger "notarized (sic) me in restraints, in pain [and] also the visual effects of handcuffs being used as compressed devices." Plaintiff further states that Defendant Edinger ignored his request for medical attention. Additionally, Plaintiff states that Defendant Officer Shriek "also witnessed me in restraints on 10-9-12" and that Shriek also ignored his request for medical attention. (Doc. 19, p. 5).

Generally, Plaintiff alleges that he was denied medical visits and information, and that "all attempts to notify the Warden [were] abrogated or intercepted by the building Administration" and that he was "retaliated against by Administration in spiteful random [illegible]." (Id., p. 3).

Plaintiff also attempts to allege an Eighth Amendment denial of medical care for events that took place while he was confined at the United States Penitentiary Big Sandy, Inez, Kentucky ("USP-Big Sandy"). (Doc. 19, p. 4). Plaintiff indicated in his Complaint filed in his Civil No. 13-0061case, that prior to his confinement at USP-Lewisburg, he was confined at USP-Big Sandy in Inez, KY, commencing on July 10, 2010. Plaintiff stated that he was transferred to USP-Lewisburg on September 3, 2011. As indicated

above, Plaintiff is presently confined at USP-Lewisburg. On page 4 of his instant Second Amended Complaint, Civil No. 12-2509, Plaintiff claims that during his prior confinement at USP-Big Sandy in about June of 2010, he had requested a "leg brace" (*i.e.*, a knee brace) due to an existing injury to his left knee from a gunshot wound. Plaintiff states that he was not allowed to have the knee brace during his confinement in the Special Housing Unit at Big Sandy, but that he was supposed to receive the brace when he was returned to general population. (*See also* Doc. 20 Exhibits). Plaintiff states that when he was transferred to USP-Lewisburg, he was denied medical care despite complaining of pain and the importance of obtaining a brace for his knee. (Doc. 19, p. 4.). Plaintiff states that for 2 ½ to 3 years at USP-Lewisburg, he has been medically "neglected" and forced to endure leg pain due to the lack of a knee brace. Plaintiff also states that his leg condition has worsened. (Id.). Plaintiff states that he will forward the Court copies of his BOP administrative remedies in the future.

As mentioned, Plaintiff filed Exhibits on May 20, 2013. (Doc. 20). Many of Plaintiff 's Exhibits, including the copies of his BOP administrative remedies, attached to his Doc. 20 filing in this case relate to Plaintiff's attempts to obtain medical care for his knee and a knee brace during his prior confinement at USP-Big Sandy. The Exhibits also pertain to Plaintiff 's BOP administrative remedies he filed at USP-Lewisburg in which he complained about his medical care and sought a leg brace. Plaintiff also requested a transfer to a medical facility. Plaintiff 's own Exhibits do not show that he filed BOP administrative remedies with respect to his excessive force claims and conditions of

condiment claims which he raises in his Second Amended Complaint. Further, Plaintiff's

own Exhibits show that he did not fully and properly exhaust his BOP administrative

remedies with respect to his denial of proper medical care claims and request for a knee

brace he raises in the present case. Thus, Plaintiff himself has demonstrated his failure

to have fully exhausted his available BOP administrative remedies with respect to instant

constitutional claims. (*See* Doc. 20 Exhibits).

As relief in his Second Amended Complaint, Plaintiff requests that he be

transferred to "a medical facility and a medical environment (cell) unit until I can be

accommodated medically. . . ." (Doc. 19, p. 4). Plaintiff also appears to request that he

be provided with a knee brace. Further, Plaintiff requests summary judgment to be

entered in his favor, as well as damages for pain and suffering, emotional damage, and

"life long physical damage." Additionally, Plaintiff requests compensatory damages in

the amount of two hundred fifty thousand dollars ($250,000.00). (Id.).[5]

## IV. DISCUSSION.

Insofar as Plaintiff again names the BOP as a Defendant in his Second Amended

Complaint, the law is clear that the BOP is not a proper Defendant in a *Bivens* action.

*See FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Njos v. BOP*, Civil No. 12-1251, M.D.

Pa., January 8, 2013 Memorandum and Order (J. Kosik)(Court dismissed with prejudice

Plaintiff inmate's constitutional claims in a *Bivens* action against the BOP). Thus, we will

---

[5]With respect to Plaintiff's request that he be transferred to another facility or area of USP-Lewisburg, the Court has already dismissed this request with prejudice in an Order dated March 19, 2013. (Doc. 13).

recommend that Defendant BOP be dismissed with prejudice from this *Bivens* action.
Based on well-settled case law, we find futility of any amended pleading with respect to
Plaintiff's constitutional claims asserted against Defendant BOP under *Bivens*. *See*
*Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-
236.

insofar as Plaintiff, in his Second Amended Complaint, seeks money damages
against Defendants in their official capacities, these claims for damages should be
dismissed with prejudice since they are barred by sovereign immunity. *See Breyer v.*
*Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998); *Debrew v. Auman*, 354 Fed. Appx.
639, 641 (3d Cir. 2009). The Third Circuit has held that a Plaintiff who filed an *in forma*
*pauperis* request and whose Complaint fails to state a cognizable claim is entitled to
amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility.
*See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v.*
*Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). However, based on well-settled law, we
find futility in granting Plaintiff leave to amend his damages claims against Defendants in
their official capacities and, thus, these claims should again be dismissed with prejudice.

With respect to Defendant Warden Berkinbile, Plaintiff indicates that this
Defendant is the Warden at USP-Big Sandy. (Doc. 19, p. 4). Plaintiff has named
Warden Berkinbile as a Defendant in this case based on alleged constitutional violations
which occurred during Plaintiff 's prior confinement at USP-Big Sandy. As such, we find
that venue over Plaintiff 's constitutional claims against Defendant Warden Berkinbile is

not proper in this Court.

In fact, with respect to all of Plaintiff's claims he raises in his present case which arose during his prior confinement at USP-Big Sandy, *i.e.*, from July 10, 2010 through September 3, 2011, we will recommend that they be transferred to the Eastern District in Kentucky since venue over these claims is improper in the M.D. Pa. *See Fattah v. Doe*, 2010 WL 5147449 (M.D. Pa.) (CV-10-1607). We find that venue with respect to Plaintiff's Eighth Amendment denial of proper medical care claims against the BOP staff at USP-Big Sandy does not properly lie with this Court, and that these claims should be dismissed without prejudice to Plaintiff to file an action in the District Court for the Eastern District of Kentucky. *See* 28 U.S.C. § 1391(b); *see also Holley v. Robinson*, 2010 WL 1837797 (M.D. Pa.).

Plaintiff's Eighth Amendment claims against the BOP employees at USP-Big Sandy, including Defendant Warden Berkinbile, arose while he was located in Inez, Kentucky. These claims relate to alleged unconstitutional actions by the BOP employees at USP-Big Sandy all occurred in Inez, Kentucky. Inez, Kentucky, is within the jurisdiction of the United States District Court for the Eastern District of Kentucky, and all of the Defendants regarding Plaintiff 's claims which arose at USP-Big Sandy are located there. Venue is therefore proper in the Eastern District of Kentucky with respect to all of Plaintiff's constitutional claims against the BOP employees at USP-Big Sandy.

Accordingly, we recommend that all of Plaintiff's Eighth Amendment claims against the BOP employees at USP-Big Sandy be dismissed without prejudice to Plaintiff

filing them in the United States District Court for the Eastern District of Kentucky. *See*
*Joyner v. BOP*, 2005 WL 3088371 (M.D. Pa.); *Michtavi v. Miner*, Civil No. 07-0628,
M.D. Pa.; *Aponte v. Cheponis*, Civil No. 10-0003, M.D. Pa.; *Fattah v. Doe*, 2010 WL
5147449. Alternatively, we will recommend that all of Plaintiff's claims against the BOP
employees at USP-Big Sandy be transferred to the Eastern District of Kentucky pursuant
to 28 U.S.C. § 1406(a). *See Holley, supra*.

Further, Plaintiff has failed to allege any personal involvement of Defendant
Warden Berkinbile with respect to the constitutional violations alleged in his Second
Amended Complaint which occurred at USP-Lewisburg. Additionally, "[b]ecause
vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that
each Government-official defendant, through the official's own individual actions, has
violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009).

Therefore, we will recommend that Defendant Warden Berkinbile be dismissed
from this case with prejudice. Based on the above, we find futility and undue prejudice
to Defendant Warden Berkinbile in allowing Plaintiff to file a third amended Complaint
with respect to this Defendant.

Moreover, while it is unclear from the face of Plaintiff's Second Amended
Complaint as to whether he has fully and properly exhausted his BOP administrative
remedies with respect to his constitutional claims which arose at USP-Lewisburg, we find
that Plaintiff 's own Exhibits attached to his Doc. 20 filing show that he did not complete
exhaustion. As stated above, we do not find that Plaintiff's Exhibits include any BOP

administrative remedies filed with respect to his excessive force claims and conditions of

confinement claims which he raises in his Second Amended Complaint which arose on

September 17, 2011, September 14, 2012, and on October 9, 2012.[6]  Further, Plaintiff's

own Exhibits show that he did not fully and properly exhaust his BOP administrative

remedies with respect to his denial of proper medical care claims and claim for a knee

brace he raises in the present case which arose at USP-Lewisburg.

Exhaustion of administrative remedies is a prerequisite that must be satisfied in

order for an inmate to file a civil rights action in federal court.    *See Mitchell v. Dodrill*,

696 F.Supp.2d 454 (M.D. Pa. 2010); *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d

Cir. 2002); *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   As mentioned, Plaintiff alleges in

his Second Amended Complaint two incidents in which unnamed USP-Lewisburg prison

---

[6]Plaintiff's Exhibits attached to his Doc. 20 filing show that the correct dates of the alleged second incident and third incident at USP-Lewisburg were September 12, 2012 and October 9, 2012, respectively, and not September 14, 2012 and October 8, 2012, as he alleged in his Second Amended Complaint.   Plaintiff's Exhibits also show that Plaintiff was charged with Incident Reports regarding both the September 12, 2012 and October 9, 2012 incidents and that Plaintiff was found guilty regrading the October 9, 2012 incident.  Thus, Plaintiff's present constitutional claims may, in part, be *Heck* barred.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck*, the Supreme Court stated:
A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487; *see also Murphy v. Bloom*, 443 Fed.Appx. 668, 669 (3d Cir. 2011).

staff improperly placed restraints on him to cause him pain and kept him restrained for about 24 hours, namely, on September 17, 2011, and on October 9, 2012. Plaintiff further avers that the team of corrections officers put him in shackles and handcuffs with a waist chain on both dates, and that the corrections officers had a vendetta against him and, therefore put the restraints on him improperly to cause him pain. Plaintiff also alleges that the restraints were used as "compression devices." Plaintiffs states that he has metal burns on his wrists and abdomen because the restraints were too tight. Plaintiff further states that in total, there were three times in which unnamed corrections officers put him in restraints in the manner described above. According to the Plaintiff, he was placed in a cell with no sheets or blankets on the bed, and the window open in "the middle of October." Plaintiff alleges that he was restrained in the cell on both dates for a period of about 24 hours. Plaintiff states that he has permanent damage to his hand as a result of being restrained in the manner described above.

As mentioned, the face of his Second Amended Complaint, it is unclear whether Plaintiff has exhausted his BOP administrative remedies. However, we find that Plaintiff's Exhibits attached to his Doc. 20 filing show that he did not fully and properly exhaust all of his BOP administrative remedies with respect to any of his constitutional claims. A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). In screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss without

prejudice Plaintiff's action regarding his constitutional claims which are not yet exhausted because his Complaint makes clear that he has not commenced the BOP administrative remedy process. (Doc. 1, p. 1). *See Jones v. Lorady*, 2011 WL 2461982 (M.D. Pa. 6-17-11)(citing *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10)).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit stated:

> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra*.

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell, supra*; *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action.

The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted).  Further, the Defendants have   the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted).  Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d at 465, stated:

> The United States Court of Appeals for the Third Circuit has not issued a precedential opinion on the issue. However, in a non-precedential opinion, the Court found that the lower court had properly dismissed the plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. *Oriakhi v. United States,* 165 Fed.Appx. 991, 993 (3d Cir.2006) (not precedential). "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion

has occurred." *Id.* (quoting *Johnson,* 340 F.3d at 627–28). The Court further stated that "[t]he fact that [the plaintiff] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi,* 165 Fed.Appx. at 993 (citing *Johnson,* 340 F.3d at 627–28). (not precedential).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9 . The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1*; Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

We take judicial notice that the BOP had an administrative remedy policy at USP-Lewisburg during the relevant times of this case. *See Cooper v. Sniezek*, 2010 WL 3528848, *7-*8 (M.D. Pa. 9-7-10); *Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64. As stated, we find that Plaintiff has shown he failed to exhaust all of his BOP administrative remedies regrading any of his instant constitutional claims. Plaintiff also seems to indicate that he is excused from exhaustion since the only remedy for his alleged injuries is money damages. (Doc 19, p. 1). However, as discussed herein, exhaustion is required regardless of what relief the inmate seeks.

The *Cooper* Court, 2010 WL 3528848, *7-*8, stated as follows:

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq.* An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id.* at § 542.14(a). The inmate has twenty (20) days following the date on which the basis for the complaint occurred in which to complete informal resolution and submit a formal written administrative remedy request. *Id.* The procedure further provides that an extension may be allowed where an inmate demonstrates a valid reasons for delay. *Id.* at § 542.14(b). The regulation states, in part:

Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request of Appeal; an extended period of time during which the inmate was physically incapable of preparing  a Request of Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*Id.* If dissatisfied with the response to the formal written request, the inmate may then appeal an adverse decision to the Regional Office and the Central Office of BOP's General Counsel. *Id.* at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *Id.* at § 542.15(a).

The *Cooper* Court also stated:

A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ...

of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

2010 WL 3528848, *7.

Thus, we respect to the threshold question of whether Plaintiff has exhausted all available BOP administrative remedies, we conclude that Plaintiff has not exhausted his BOP administrative remedies regarding his constitutional claims.

More importantly, even if Plaintiff's constitutional claims were exhausted during the BOP administrative remedy process, Plaintiff has failed for a third time to properly allege the personal involvement of any of the numerous Defendants named in his Second Amended Complaint. For each incident discussed, Plaintiff generally alleges that "they" restrained him, or that "Administration" had a vindictive vendetta against him.

Nowhere in his Second Amended Complaint does Plaintiff allege that any of the named Defendants were involved in any constitutional violations.

As stated, it is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.*

The Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009)*,* repeated the personal involvement necessary in a civil rights action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court cited *Iqba*l:

> "To survive a motion to dismiss, a complaint must contain
>
> sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).
>
> "Innis's allegation against Wilson also fails because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not

allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

In *Saltzman v. Independence Blue Cross*, 2009 WL 1606887, *4 (E.D.

Pa.), the Court stated:

> The Court in *Iqbal* explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 555); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir.2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."
> (citing *Twombly,* 550 U.S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).

*See Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual

support are not entitled to the assumption of truth.")(citation omitted).

In light of the aforementioned requirements of both a *Bivens* action and *Iqbal*, we

find that Plaintiff's Second Amended Complaint lacks sufficient allegations as to any

proper Defendant and what any proper Defendant personally did to violate any of

Plaintiff's Eighth Amendment rights. We also find that Plaintiff failed to sufficiently state

any constitutional claims in accordance with *Bivens* against any proper Defendant.

Furthermore, in addition to failing to allege each Defendant's personal involvement in relation to Plaintiff's claims, Plaintiff has also failed to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure. *Pro se* parties are accorded substantial deference and liberality in federal court. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). They are not, however, free to ignore the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests; (2) the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief sought by the pleader.

Although there is not a heightened pleading standard in civil rights cases,[7] a civil rights complaint in order to comply with Rule 8 must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so that the court can determine that the compliant is not frivolous and a defendant has adequate notice to frame an answer. *Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 68 (3d Cir. 1986). A civil rights complaint complies with this standard if it alleges the conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials. Also, a civil rights pleading must include factual allegations to support the

---

[7] In *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163 (1993), the United States Supreme Court held that it was improper to apply heightened pleading standards to § 1983 actions. The Court noted that a § 1983 complaint need only comply "with the liberal system of 'notice pleading' set up by the Federal Rules." *Id* at 167.

constitutional claims raised in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 1953 (2009).

Under even the most liberal construction, Plaintiff's Second Amended Complaint is in clear violation of Rule 8. It does not give any proper Defendant fair notice of what Plaintiff's claims against him are and the grounds upon which his claims rest. Even taking into account the fact that Plaintiff is proceeding *pro se*, his second Amended Complaint is still not in conformity with Rule 8 of the Federal Rules of Civil Procedure. It certainly does not set forth in brief, concise, and understandable terms the personal conduct of any proper Defendant about which Plaintiff is complaining.

Therefore, because Plaintiff has once again not properly alleged the personal involvement of his 14 named Defendants in accordance with the requirements of a *Bivens* civil rights action, and because Plaintiff has failed to comply with Rule 8(a) of the Federal Rules of Civil Procedure, we will recommend that this Court dismiss Plaintiff's Second Amended Complaint, and thus the entire action, with prejudice. The Third Circuit has held that a plaintiff who has filed an *in forma pauperis* request and whose complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). Thus, if a complaint is subject to dismissal for failure to state a claim, the court must first allow Plaintiff leave to amend. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Further, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Id.* (citations omitted). However, because Plaintiff has already had three

opportunities to properly allege a constitutional claims in this *Bivens* civil rights action in, we find futility and undue prejudice to Defendants in allowing Plaintiff to amend his Complaint for a fourth time.  *See Grayson, supra.*

Furthermore, even if this Court finds that Plaintiff has complied with the personal involvement requirement of a *Bivens* civil rights action and with Rule 8(a) of the Federal Rules of Civil Procedure, Plaintiff has still failed to properly allege the elements of each of his Eighth Amendment claims, namely, his excessive force claims, his conditions of confinement claims, and his denial of medical care claims.

As described above, Plaintiff alleges the following conditions of his confinement on September 12, 2012 and on October 9, 2012 (the correct dates), violated his Eighth Amendment rights: (1) the restraints, namely, the handcuffs and waist-chains, were too tight, and being used as compression devices; (2) being restrained in the manner described above, in a cell with no sheets or blankets with the window open for  periods of about 24 hours; and (3) being restrained in the manner described above, in a cell for about 24 hours with his hands cuffed behind his back.

In *Mitchell v. Dodrill*, 696 F.Supp.2d at 466, the Court stated:

The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air.  *Helling v. McKinney*, 509 U.S. 25, 32 (1993).  However, the Eighth Amendment does not mandate that prisons be free of discomfort  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  No static test determines whether conditions of confinement are "cruel and unusual."  These terms must "draw [their]

meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).

To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (*quoting Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id. at 298*. As described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

To summarize, the Supreme Court has held that when an Eighth Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000)(citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). Furthermore, the Third Circuit defined deliberate indifference as "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also Bizzell v. Tennis*, 449 Fed. Appx. 112, 115 (3d Cir. 2011). Furthermore, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Based on the facts alleged in his Second Amended Complaint, Plaintiff has not stated sufficient facts for the Court to conclude that his Eighth Amendment conditions of confinement claims should proceed because he has failed to allege: (1) that the

deprivation alleged was objectively, sufficiently serious; and (2) that any properly named individual Defendant who was one of the unnamed staff at USP-Lewisburg involved with the two incidents described above acted with deliberate indifference to an excessive risk to his health and/or safety as required by *Farmer*.

As mentioned above, an objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). Plaintiff alleges in his Second Amended Complaint that he was confined to a cell in restraints on two separate occasions, both times for a period of about 24 hours. On the second occasion, Plaintiff avers that a window in the cell was left open in October, and that he was deprived of sheets and a blanket. Plaintiff does not state what the outside temperature was or if he was cold.  Plaintiff further alleges that the restraints were too tight, that he was cuffed behind his back making necessary human functions difficult to perform, and that the restraints  left metal burns on his wrists and abdomen causing permanent damage.  These deprivations do not amount to the denial of "minimal measures of life's necessities" such as food, water, and shelter. Further, as stated, Plaintiff has not sufficiently stated the personal involvement of any Defendant with respect to his constitutional claims. Therefore, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claims be dismissed with prejudice as we find futility in allowing Plaintiff to file a third Amended Complaint with regards to these

claims.  *See Grayson, supra*.

Furthermore, with regards to Plaintiff's Eighth Amendment excessive force claims, even if the Court finds that Plaintiff has alleged the personal involvement of each Defendant and has complied with Rule 8(a) of the Federal Rules of Civil Procedure, we will recommend that Plaintiff's Eighth Amendment excessive force claims be dismissed with prejudice.

As the Court stated in *Freeman v. Bronkoski*, 2008 WL 4414725, *4 (M.D. Pa.):

> The Third Circuit Court of Appeals has noted that "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified.  *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).

> In considering such a claim, the fact-finder must determine " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson v. McMillan*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L. Ed. 2d 156 (1990)).

> When " 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," summary judgment is inappropriate for the defendant.  *Id*. (quoting *Whitley v. Albers*,475 U.S. 312, 322, 106 S.Ct. 1078, 89 L. Ed. 2d 251 (1986)). Five factors apply in determining whether a correctional officer excessive force: "(1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of the injury inflicted;'' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of the response.'" Id. (quoting Whitley, 475 U.S. at 321).

*See also Bright v. Gillis*, 89 Fed. Appx. 802, 805 (3d Cir. 2004) (Court stated the factors in establishing an Eighth Amendment excessive force claim against prison staff).

The Court in *Wesley v. Dombrowski*, 2004 WL 1465650 *6 (E.D. Pa.), stated:

> "The core inquiry in claims of excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." (Citing *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

*Wesley*, 2004 WL 1465650 *6. *See also Eppers v. Dragovich*, 1996 WL 420830 (E.D.Pa.).

In analyzing these five *Hudson* factors in relation to the alleged facts at hand, we will recommend that Plaintiff's Eighth Amendment excessive force claims be dismissed with prejudice because not only has Plaintiff failed to allege any Defendant's personal involvement in these claims, but furthermore, Plaintiff has failed to allege enough facts for the Court to determine  whether the force applied was in a "good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *See Wesley, supra*.  Therefore, we will recommend that Plaintiff's Eighth Amendment excessive force claims be dismissed with prejudice as we find futility in allowing Plaintiff to allege these claims in a third Amended Complaint.  *See Grayson, supra*.

Lastly, even if the Court finds that Plaintiff alleged the personal involvement of Defendants and complied with Rule 8(a) of the Federal Rules of Civil Procedure, we will recommend that Plaintiff's Eighth Amendment denial of medical care claims be

dismissed with prejudice.

Plaintiff has failed to properly allege his Eighth Amendment denial of medical care claims against Defendants. To demonstrate an Eighth Amendment violation, as the Court stated in *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.), the Court stated:

> The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004); *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191, 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347).

The Third Circuit further defined deliberate indifference in *Natale v. Camden City Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court held that:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of an disregards an excessive risk to inmate health and safety; the official must be both

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id* at 107. "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

*See also George v. PA DOC*, 2010 WL 936778, *5.

In examining Plaintiff's Eighth Amendment denial of medical care claims against Defendants in light of the aforementioned case law, not only has Plaintiff failed to allege any Defendants' personal involvement in these claims, but he has also failed to allege the elements of these claims because Plaintiff does not allege that the Defendants acted with deliberate indifference to his serious medical needs. He alleges no facts whatsoever that any Defendant even had knowledge of the alleged burns on his wrists and abdomen. Further, Plaintiff does not allege that any Defendant acted with deliberate indifference regarding these conditions. Therefore, we will recommend that Plaintiff's Eighth Amendment denial of medical care claims be dismissed with prejudice as we find futility in allowing Plaintiff a fourth opportunity to

amend his Eighth Amendment denial of medical care claims. *See Grayson, supra*.

**V.      RECOMMENDATION.**

Based on the foregoing discussion, we respectfully recommend that the Court:

1.      **DISMISS WITH PREJUDICE** Plaintiff's **Document 19** Second Amended

Complaint in its entirety.

2.      **DIRECT** the Clerk of Courts to close this action.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 20, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE JORDAN, | : | CIVIL ACTION NO. **3:CV-12-2509** |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES BUREAU OF PRISONS, | : | |
| *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 20, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.

<u>s/ Thomas M. Blewitt</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  June 20, 2013**